**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**DARA ARGRO, CODY BESS, MYRNA HORSHINSKI,**

        **Plaintiffs,**

**v.**                                                          **3:12-CV-910
(NAM/DEP)**

**BETTE OSBORNE, individually and as CHENANGO COUNTY, NEW YORK, COMMISSIONER OF SOCIAL SERVICES, CRYSTAL CORNELL, in her individual capacity and in her capacity as a Social Worker for the Department of Social Services, Chenango County, New York, LACE-ANN PORTER, in her individual capacity and in her capacity as a Social Worker for the Department of Social Services, Chenango County, New York, LINDA SMITH, in her individual capacity and in her capacity as a Social Worker for the Department of Social Services, Chenango County, New York, DEB MUNYAN, in her individual capacity and in her capacity as a Social Worker for the Department of Social Services, Chenango County, New York, JESSICA SMARSMACH, in her individual capacity and in her capacity as a Social Worker for the Department of Social Services, Chenango County, New York, KATHY LaVOIE, in her individual capacity and in her capacity as a Social Worker for the Department of Social Services, Chenango County, New York, KELLY O'CONNOR, in her individual capacity and in her capacity as a Social Worker for the Department of Social Services, Chenango County, New York, Det. MARSH of Norwich City Police Department, Chenango County, New York, in his official and individual capacities, JOHN DOE, Chenango County Social Worker, in his individual and official capacities, JANE DOE #1 through JANE DOE #2, Chenango County officer and employees, to be determined in discovery,**

        **Defendants.**

---

**APPEARANCES:**

Neroni Law Office  　　　　　　　　　　　　　　　　　　Tatiana Neroni, Esq.
203 Main Street
Delhi, New York 13753
*For Plaintiffs*

Shantz & Belkin  　　　　　　　　　　　　　　　　　　M. Randolph Belkin, Esq.
26 Century Hill Srive, Suite 202
Latham, New York 12110
*For Defendant Marsh*

Levene, Gouldin & Thompson, LLP  　　　　　　　　　Maria E. Lisi-Murray, Esq.
P.O. Box F-1706
Binghamton, New York 13902-0106
*For Chenango County Defendants*

**Hon. Norman A. Mordue, U.S. District Judge:**

## MEMORANDUM DECISION AND ORDER

## I.　　INTRODUCTION

The complaint (Dkt. No. 1) asserts claims under 42 U.S.C. § 1983 ("section 1983"), the Federal Constitution, and New York State common law stemming from a series of warrantless searches between June 2010 and December 2011 of plaintiffs' residence and property in Oxford, New York.

Defendant Rodney Marsh, a Detective with the Norwich City Police Department moves (Dkt. No. 6) to dismiss the complaint. Plaintiffs oppose this motion and move (Dkt. No. 13) to file a "Supplemental/2nd Amended Complaint" regarding their claims against defendant Marsh. Defendants Bette Osborne, Crystal Cornell, Lace-Ann Porter, Linda Smith, Deb Munyan, Jessica Smarsmach, Kathy LaVoie, and Kelly O'Connor, and the John and Jane Doe defendants move (Dkt. No. 12) to dismiss the complaint. Plaintiffs oppose this motion and cross-move (Dkt. No. 15) to amend, supplement, and clarify the complaint, to deem service on the county defendants

proper, and to award plaintiffs costs of personal service.

## II. COMPLAINT

The complaint, Dkt. No. 1, includes the following:[1]

    8. Sometime on or about June 17, 2010, Defendants Linda Smith and Deb Munyan came to Myrna Horshinski's and Cody Bess's residence without a search warrant or court order, gained entry into the residence and proceeded to search the residence over protests of Dara Argro, Myrna Horshinski's daughter, who was present during the search.
    9. Defendants Linda Smith and Deb Munyan proceeded to search through Myrna Horshinski's and Cody Bess's whole house, including Cody Bess's bedroom and bureau drawers, and Myrna Horshinski's bedroom and bureau drawers.
    10. Defendants Linda Smith and Deb Munyan did the search despite a direct prohibition and stated that they have a right to search the house because that's "the protocol".
    11. It is apparent that Defendants Linda Smith and Deb Munyan were referring to some policy of the Department of Social Services under which Defendants Linda Smith and Deb Munyan could search the residences, bedrooms and other private areas inside the residences of individuals residing in Chenango County without a search warrant or court order.
    12. It is apparent that such policy, if it exists, is unconstitutional, as it violates and did actually violate Cody Bess's and Myrna Horshinski expectation of privacy in their homes, bedrooms and personal documents and effects contained in their bureau drawers, and thus Defendants Linda Smith and Deb Munyan, acting in reliance on unconstitutional policy of their employers, Defendants Chenango County, and Chenango County Department of Social Services, violated Cody Bess's and Myrna Horshinski's constitutional rights under the Due Process Clauses of the 5th and 14th Amendment, and their rights against unreasonable search and seizure under the 4th Amendment of the U.S. Constitution.
    13. Linda Smith hinted to Myrna Horshinski when Myrna Horshinski protested against the search that Linda Smith works in a department which allows her to get people into nursing homes, despite clear knowledge and understanding that Myrna Horshinski is lucid, well taken care of and is not in need of a nursing home.
    14. Linda Smith's cruel statements to Myrna Horshinski that Linda Smith can "arrange" that she can put Myrna Horshinski in a nursing home against her will cause Myrna Horshinski who has a heart-related medical condition a great distress and concern.
    15. At the time of making the statement Linda Smith knew very well that

---

[1] The Court sets forth the complaint as it appears in the record, without noting or correcting errors.

3

Myrna Horshinski had a heart-related medical condition when she was making the statement.

16. At the time of making the statement Linda Smith knew very well that mg lives at home, is taken care of by her children and a grandchild who live with her and is not in need of a nursing home nor does she desire to go to a nursing home.

17. Linda Smith's actions in hinting that she can dispatch the elderly Myrna Horshinski who has a heart problem and lives at home being taken care of by her kid to a nursing home against her will if Myrna Horshinski does not cooperate in a warrantless search of her home, was extreme and outrageous behavior.

18. As a result of Linda Smith's statements Myrna Horshinski has suffered deterioration of her medical condition, emotional distress and moral suffering, and her constitutional right to privacy, care and control of her own destiny, as well as being free from unreasonable searches and seizures of the government has been violated . . . .

20. Between December 14, 2010 and December 23, 2010 employees of Chenango County Social Services Jessica Smarmach and John Doe came to the house of Myrna Horshinski, gained entry into the house as the outside door was not locked, disregarded the protests of Dara Argro against their entry, burst into the bedroom of Myrna Horshinski despite Dara Argro protests against entry and search of the house, and explanations that Myrna Horshinski is elderly, has a heart condition and is resting in bed, and searched Myrna Horshinski's bedroom while Myrna Horshinski was in bedclothes in a hospital bed, with a chamber pot next to the bed.

21. Defendants Jessica Smarmach and John Doe also searched Myrna Horshinski medicine bottles, over Dara Argro's and Myrna Horshinski's protests, by opening them medicine bottles, dropping out all the pills and counting them with their fingers without washing their hands.

22. Defendants Jessica Smarmach and John Doe also searched through Myrna Horshinski's drawers with lingerie, over Dara Argro's and Myrna Horshinski's protests, invading Myrna Horshinski's privacy in her home, person and personal effects and violating her constitutional right against unreasonable searches and seizures by the government . . . .

24. Defendants Crystal Cornell and Lace-Ann Porter, Chenango County Social workers, came to the residence of Myrna Horshinski and Cody Bess and searched the house without their consent.

25. Myrna Horshinski is 85 years old, has a heart condition and a mobility problem, and takes her shower in a sitting bathtub specially adjusted to her disability.

26. Myrna Horshinski is an extremely private and religious individual and will not willingly show her nudity even to her closest family members, much less to strangers.

27. When Defendants Lace-Ann Porter and Crystal Cornell were searching the house without consent of Dara Argro, Myrna Horshinski or anybody else in the house, they advanced toward the bathroom where Dara Argro knew her mother Myrna Horshinski was taking a shower.

28. Dara Argro warned Defendants Lace-Ann Porter and Crystal Cornell that

4

Myrna Horshinski is taking a shower at the moment, that she is extremely private and would not want an intrusion upon herself, and also that she is 85 years old, disabled and has a heart condition.

29. That information did not deter Defendants Crystal Cornell and Lace-Ann Porter.

30. Defendant Lace-Ann Porter pushed Plaintiff Dara Argro into a washing machine, causing her to incur a bruise, to allow Defendant Crystal Cornell to get access to the bathroom where Myrna Horshinski was taking a shower at the time.

31. Crystal Cornell then burst into the shower, deeply embarrassing and humiliating Myrna Horshinski who was in the shower at the time.

32. After searching the bathroom with Myrna Horshinski in it, Defendant Lace-Ann Porter proceeded to search Cody Bess's bedroom.

33. Cody Bess by that time installed a padlock on his bedroom door and instructed his family members living in the house that he has left a key to the padlock only for the event if there is a fire in the house and his room has to be accessed because of the fire, but directly prohibited searches of his bedroom

34. Cody Bess's prohibition to unlock and search his bedroom was communicated to Defendants Lace-Ann Porter and Crystal Cornell by Dara Argro.

35. Despite that prohibition, Lace-Ann Porter grabbed the key to the padlock, unlocked the padlock to Cody Bess's bedroom door, and proceeded to search Cody Bess's bedroom, looking under his mattress, bureau drawers and doing a complete search of the room, looking, as she stated, for drug paraphernalia.

36. Upon information and believe, Defendants Lace-Ann Porter and Crystall Cornell did not have a search warrant or court order at the time of the search, as they did not show any search warrants to Dara Argro and indicated they do not need any.

37. Upon information and belief, Defendants Lace-Ann Porter and Crystall Cornell had no legal basis for the search of Cody Bess's bedroom or personal effects whatsoever.

38. At the time of the search, Defendants Lace-Ann Porter and Crystall Cornell claimed the non-consensual search of the entire house, the bedroom and personal effects of all inhabitants was part of their agency's "protocol".

39. When Dara Argro objected to the non-consensual search, Defendant Lace-Ann Porter adamantly made a statement to the effect that her government job has "absolutely no responsibility and no accountability to the general public whatsoever, and that's what makes it such a great job". . . .

44. On or about September 22, 2011, two Chenango County Social Services workers who refused to give their names, Jane Doe # 1 and Jane Doe # 2, came to the door of Myrna Horshinski home where Cody Bess was renting a room.

45. Upon information and belief, Jane Doe # 1 and Jane Doe # 2 attempted to search the house, which attempt was denied to them, and then went on to search Cody Bess's vehicle and without Cody Bess's consent and over a direct prohibition not to do that.

. . .

48. In or about December of 2011, Defendants Kelly O'Connor and

5

Detective Marsh, acting jointly and severally and in conspiracy with Defendant Kathy LaVoie, attempted to coerce Dara Argro to make a false incriminating statement against her sister and threatening that if Dara Argro refuses to do so, she will go to jail. Thus, Defendants O'Connor, LaVoie and Marsh violated Dara Argro's right to due process of law, right to privacy, and caused Dara Argro severe emotional distress and a painful medical condition directly related to the distress.

. . .

54. Upon information and belief, Defendant Bette Osbourne is a policymaker in her agency.

55. Upon information and belief, Defendant Bette Osbourne did not establish proper training policies of her personnel regarding individuals' constitutional right against self-incrimination, coercion, as well as constitutional right to privacy, including but not limited to privacy in individuals' person, personal effects and documents, vehicles and homes and against unreasonable search and seizure.

56. Instead, upon information and belief, Defendant Bette Osbourne established an unwritten policy or "protocol", as announced by Defendant Osbourne's employees Defendants Linda Smith and Deb Munyan.

57. Upon information and belief, following this unwritten policy or "protocol" Defendant Osbourne's employees were allowed to enter anybody's home without a search warrant or court order and without any care of protestations of privacy and objections to searches, and do whatever they like, and were instructed that they are allowed to search any vehicle they want without a warrant or court order and without consent of the owner.

The complaint asserts six causes of action. The first cause of action arises from the June 17, 2010 search and alleges that defendants Chenango County, Chenango County Department of Social Services, Linda Smith and Deb Munyan violated the Fourth, Fifth, and Fourteenth Amendment rights of plaintiffs Myrna Horshinski and Cody Bess.

The second cause of action arises from the searches on December 14, 2010 and December 23, 2010 and alleges that defendants Jessica Smarsmach and John Doe violated plaintiffs Myrna Horshinski's and Cody Bess's "constitutional right to privacy" and "right to be secure against unreasonable searches and seizures by the government".

The third cause of action alleges that defendants Crystal Cornell and Lace-Ann Porter used excessive force against Dara Argro and subjected her to an unreasonable search and

6

seizure. It also alleges that defendants Crystal Cornell and Lace-Ann Porter violated plaintiffs Myrna Horshinski's and Cody Bess's right to privacy and right to be free from unreasonable searches and seizures.

The fourth cause of action stems from the September 22, 2011 search of the residence and plaintiff Cody Bess's vehicle by defendants Jane Doe # 1 and Jane Doe # 2 and alleges that these defendants violated plaintiff Cody Bess's and Myrna Horshinski's right to privacy and right to be free from unreasonable searches and seizures.

The fifth cause of action alleges that in December 2011 defendants O'Connor, Marsh, and LaVoi conspired "to coerce Dara Argro to make a false incriminating statement against her sister and threatening that if Dara Argro refuses to do so, she will go to jail" and violated Dara Argro's right to due process of law and right to privacy, and intentionally inflicted emotional distress.

The sixth cause of action[2] alleges that defendant Osborne, Commissioner of Social Services of Chenango County, is a policy maker, and failed to establish "proper training policies of her personnel regarding individual's constitutional right against self-incrimination, coercion, as well as constitutional right to privacy, including but not limited to privacy in individual's person, personal effects and documents, vehicles and homes and against unreasonable search and seizure." As a result, according to the complaint, Osborne violated plaintiffs' Fourth, Fifth, Ninth, and Fourteenth Amendment rights. Plaintiffs seek compensatory and punitive damages as well as injunctive relief.

---

[2]The complaint contains two "fifth cause" of actions.

7

## III. MOTION TO DISMISS - Fed. R. Civ. P. 12(b)(6)

To survive a dismissal motion, "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in plaintiffs' favor. *See ATSI*, 493 F.3d at 98.

### A. Eleventh Amendment

Detective Marsh seeks dismissal of all section 1983[3] claims against him in his official capacity. The Eleventh Amendment bars "federal suits against state governments by a state's own citizens." *Woods v. Rondout Valley Cent. Sch.*, 466 F.3d 232, 236 (2d Cir.2006) (citation omitted). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state." *Id*. (quoting *Regents of The Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). The Eleventh Amendment also bars claims against arms of the state and any persons authorized to act on behalf of the state who were acting in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70–71 (1989). Accordingly, all federal claims against defendant Marsh in his official capacity are dismissed.

---

[3]Section 1983 allows an action at law against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

8

### B. Notice of Claim

Defendants seeks dismissal of all state claims against them on the ground that the complaint fails to allege that plaintiffs filed a notice of claim. Pursuant to New York General Municipal Law § 50-i:

> No action . . . shall be prosecuted or maintained against a city . . . for personal injury, wrongful death or damage to real or personal property alleged to have been sustained by reason of the negligence or wrongful act of such city . . . or of any officer, agent or employee thereof . . . unless, (a) a notice of claim shall have been made and served upon the city . . . ."

N.Y. GEN. MUNIC. LAW § 50i; N.Y. GEN. MUNIC. LAW § 50-e (negligence and malfeasance of public officers); *see also Fincher v. County of Westchester*, 979 F.Supp. 989, 1002 (S.D.N.Y. 1997) ("The notice of claim requirements apply equally to state tort claims brought as pendent claims in a federal civil rights action." ). Plaintiffs admit they have not filed a notice of claim and assert that they "did not have to serve a Notice of Claim . . . as a condition precedent of suing [plaintiffs] . . . for intentional infliction of emotional distress in [their] individual capacity".

"Service of a notice of claim upon . . . an employee of a [municipality] is not a condition precedent to the commencement of action against such person unless the [municipaility] is required to indemnify such person." *Grasso v. Schenectady Cnty. Pub. Library*, 30 A.D. 3d 814, 817-18 (3d Dep't 2006) (internal quotation marks and citation omitted) (emphasis in original). The duty to indemnify "turns on whether [the employee was] acting within the scope of [his] employment . . . and if that local option was formally adopted by a local governing body." *Id*. at 818 (internal citation omitted). To the extent the complaint may be read to state that defendants were acting outside the scope of his employment when they allegedly intentionally inflicted

9

emotional distress, a notice of claim was not required.

### E. Intentional Infliction of Emotional Distress

Defendants Osborne, Cornell, Porter, Smith, Munyan, Smarsmach, LaVoie, O'Connor, and the John and Jane Doe move to dismiss all intentional infliction of emotional distress ("IIED") claims arising from events on June 17, 2010 and December 23, 2010 on the ground that they are barred by the one year statute of limitations. *See* N.Y. C.P.L.R. § 215(3). In response, plaintiffs state that the only IIED claim they intend to pursue stems from events in December 2011, which are within the one year statute of limitations. Accordingly, to the extent the complaint alleges IIED claims stemming from events on June 17, 2010 and December 23, 2010, those claims are dismissed.

### C. Conspiracy Claim

Defendants O'Connor, Marsh, and LaVoie argue that the fifth cause of action fails to allege the existence of a conspiracy to violate plaintiff's constitutional rights. To state a § 1983 conspiracy claim, a plaintiff must allege facts showing: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002) (same). "It is well settled that claims of conspiracy 'containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.'" *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (quoting *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993) (additional quotation marks omitted)).

10

Here the complaint alleges:

> In or about December of 2011, Defendants Kelly O'Connor and Detective Marsh, acting jointly and severally and in conspiracy with Defendant Kathy LaVoie, attempted to coerce Dara Argro to make a false incriminating statement against her sister and threatening that if Dara Argro refuses to do so, she will go to jail.

Dkt. No. 1, ¶ 48. In the absence of any facts indicating a meeting of the minds or agreement between Marsh, O'Connor and LaVoie, Argro's allegation of "conspiracy" is conclusory and fails to state a claim of conspiracy to violate her constitutional rights under section 1983. *See Ciambriello*, 292 F.3d at 325 (dismissing section 1983 conspiracy claim because allegations were "strictly conclusory," explaining that the plaintiff had not provided "any details of time and place," and had "fail[ed] to specify in detail the factual basis" of the claim (internal quotation marks and citations omitted)).

### D. Substantive Due Process

Defendant Marsh argues that the fifth cause of action fails to state a due process claim. To make out a violation of substantive due process, a plaintiff "must demonstrate not only government action but also that the government action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005) (internal quotation marks omitted). The due process clause of the Fourteenth Amendment "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 124 (1992) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). Accepting as true all facts alleged in the complaint, the Court finds Argro's allegation that Marsh attempted to coerce her to make a false statement incriminating her sister by threatening to put her in jail states a plausible claim for relief under the substantive due process clause.

11

## IV.	MOTION TO DISMISS - Fed. R. Civ. P. 12(b)(5)

The Chenango County defendants move pursuant to Rule 12(b)(5) to dismiss the complaint on the ground that service of process was insufficient. Federal Rule of Civil Procedure 4 requires that a summons and copy of the complaint be served on each defendant within 120 days after the complaint is filed. Fed. R. Civ. P. 4(c), (m). Rule 4(e) states that an individual may be served "by":

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> (2) doing any of the following:
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(1)-(2). Section 308 of New York Civil Practice Law and Rules states, in relevant part, that "[p]ersonal service upon a natural person shall by made by . . . the following methods":

> by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such delivery and mailing to be effected within twenty days of each other; proof of such service shall be filed with the clerk of the court designated in the summons within twenty days of either such delivery or mailing, whichever is effected later; service shall be complete ten days after such filing; proof of service shall identify such person of suitable age and discretion and state the date, time and place of service . . . .

N.Y. C.P.L.R. 308(2).

Rule 4(d) of the Federal Rules of Civil Procedure provides that, instead of attempting the above methods, a plaintiff may request that an individual defendant execute a waiver of service:

> (d) Waiving Service.
> (1) Requesting a Waiver. An individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses of serving the summons. The plaintiff may notify such a defendant that an action has been commenced and request that the defendant waive service of a summons. The notice and request must:
> > (A) be in writing and be addressed:
> > > (i) to the individual defendant; or
> > > (ii) for a defendant subject to service under Rule 4(h), to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process;
> > (B) name the court where the complaint was filed;
> > (C) be accompanied by a copy of the complaint, two copies of a waiver form, and a prepaid means for returning the form;
> > (D) inform the defendant, using text prescribed in Form 5, of the consequences of waiving and not waiving service;
> > (E) state the date when the request is sent;
> > (F) give the defendant a reasonable time of at least 30 days after the request was sent--or at least 60 days if sent to the defendant outside any judicial district of the United States--to return the waiver; and
> > (G) be sent by first-class mail or other reliable means.

Fed. R. Civ. P. 4(d)(1). The consequences for a defendant's failure to waive, without good cause, are as follows:

> (2) Failure to Waive. If a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court must impose on the defendant:
> (A) the expenses later incurred in making service; and
> (B) the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses.

Fed. R. Civ. P. 4(d)(2).

In this case, plaintiffs requested that the individual defendants waive service by mailing a waiver and complaint to each defendant at their place of business. The notices plaintiffs sent, however, only allowed defendants 20 days to return the waivers. Since Rule 4(d) specifies that

13

the notice and request must give a defendant 30 days to return a waiver, the notices plaintiffs sent did not meet Rule 4(d)'s requirements. Accordingly, plaintiffs' request pursuant to Rule 4(d)(2) that the Court award them the expenses they incurred attempting service, is denied.

Plaintiffs did not satisfy the state requirements for service under New York State law, either; the envelopes mailed to defendants displayed plaintiffs' attorney's address. *See* N.Y. C.P.L.R. 308(2) (specifying that the envelope must "bear[] the legend "personal and confidential" and not indicat[e] on the outside thereof, by return address or otherwise, that the communication is from an attorney"). Although there appears to have been an attempt to cover "NERONI LAW OFFICE" with white out on the envelope, it is still visible on most of the envelopes. Moreover, the attorney's address is, as stated, displayed on every envelope.

Karlton Tompkins, who was hired by plaintiffs' attorney to perform service of process, states in his affidavit that he personally served Crystal Cornell at her home address by leaving the summons and complaint with Jessica Wilcox, who was at the residence. Tompkins states that he also mailed the summons and complaint to Cornell at her home address.

In her affidavit, Cornell states that at the time of service, she no longer lived at the residence where Tompkins attempted service. Cornell admits receiving a copy of the summons and complaint after it was forwarded to her new address by the United States Postal Service. The envelope, however, like the others, displayed plaintiffs' attorney's address.

Although defendants request that the Court dismiss the complaint, in view of the efforts plaintiffs have made to effect service, the Court will grant plaintiffs an additional 30 days to serve defendants. *See* Fed. R. Civ. P. 4(m) ("if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period"). If plaintiffs fail to effect

14

service properly, however, they are advised that the complaint may be dismissed. *See* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court - on motion or on its own after notice to the plaintiff - must dismiss the action without prejudice against that defendant").

## V.     CROSS MOTION TO AMEND THE COMPLAINT

Plaintiffs move (Dkt. Nos. 13, 15) to supplement and amend the complaint. Pursuant to Rule 15, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Accordingly, plaintiffs' motions are granted. The Court directs plaintiffs to file the proposed "2nd Amended Complaint", Dkt. No. 19-1, within five (5) days of the date of this order. Plaintiffs shall provide copies of the "2nd Amended Complaint" (Dkt. No. 19-1) to each defendant when effecting service as directed above.

## VI.    CONCLUSION

For the forgoing reasons, it is hereby

ORDERED that defendant Marsh's motion to dismiss (Dkt. No. 6) is granted to the extent it seeks dismissal of all section 1983 claims against him in his official capacity and the conspiracy claim; and it is further

ORDERED that defendant Marsh's motion to dismiss (Dkt. No. 6) is otherwise denied in its entirety; and it is further

ORDERED that the motion to dismiss (Dkt. No. 12) by Osborne, Cornell, Porter, Smith, Munyan, Smarsmach, LaVoie, O'Connor, and the John and Jane Doe defendants is granted to the extent it seeks dismissal of the conspiracy claim and the intentional infliction of emotional

distress claims arising from events on June 17, 2010 and December 23, 2010; and it is further

ORDERED that the motion to dismiss (Dkt. No. 12) by Osborne, Cornell, Porter, Smith, Munyan, Smarsmach, LaVoie, O'Connor, and the John and Jane Doe defendants is otherwise denied it its entirety; and it is further

ORDERED that plaintiffs shall serve defendants in accordance with this Memorandum Decision and Order within thirty (30) days of the date of this Order; and it further

ORDERED that plaintiffs' motions to supplement and amend the complaint (Dkt. Nos. 13, 15) are granted and plaintiffs shall file the proposed amended complaint (Dkt. No. 19-1) within five (5) days of the date of this Memorandum Decision and Order.

IT IS SO ORDERED.

DATED: March 6, 2013
Syracuse, New York

Honorable Norman A. Mordue
U.S. District Judge