IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

DARA ARGRO, *et al.*,

        Plaintiffs,

  v.

BETTE OSBORNE, individually and as
Chenango County, New York,
Commissioner of Social Services, *et al.*,

        Defendants.

Civil Action No.
3:12-CV-0910 (NAM/DEP)

---

<u>APPEARANCES</u>:        <u>OF COUNSEL</u>:

<u>FOR PLAINTIFFS</u>:

CARROLL LAW FIRM       WOODRUFF LEE CARROLL, ESQ.
Galleries of Syracuse, 2nd Floor
441 South Salina St.
Syracuse, NY 13202

<u>FOR DEFENDANTS</u>:

LEVENE GOULDIN &       ERIN E. DONNELLY, ESQ.
THOMPSON, LLP
P.O. Box F-1706
Binghamton, NY 13902

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

This is an action brought by plaintiffs Dara Argro, Cody Bess, and Myrna Horshinski against the Chenango County Commissioner of Social Services, as well as several other individuals, some of whom are identified only as "John and Jane Doe," alleging that the defendants violated plaintiffs' civil rights and committed other tortious acts. Plaintiffs' claims arise from searches of a residence belonging to two of the plaintiffs, and include, *inter alia*, causes of action brought under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, as well as New York State law.

When the action was commenced, plaintiffs were represented by an attorney who has since been suspended from practicing law both in New York and before the bar of this court. Plaintiffs' new counsel, who only recently appeared in the action, has engaged in settlement negotiations and has requested that the court clarify the former attorney's right to assert a charging lien and/or request attorney's fees in the action, noting that the issue has served as an impediment to meaningful settlement negotiations among the parties.

For the reasons set forth below, and without the benefit of any meaningful input from plaintiffs' former counsel, I recommend that the court, in its discretion, limit the extent of former counsel's charging lien in

the action to $15,000.

I. BACKGROUND

Plaintiffs commenced this action on June 4, 2012. Dkt. No. 1. Defendants responded to plaintiff's initial complaint with the filing of two motions to dismiss, Dkt. Nos. 6, 12, and plaintiffs subsequently cross-moved for leave to amend/correct their complaint, Dkt. No. 15. Senior District Judge Norman A. Mordue issued a decision and order on March 6, 2013, granting defendants' motions, in part, and permitting plaintiffs to file an amended complaint in the action. Dkt. No. 23.

Plaintiffs subsequently filed a second amended complaint ("SAC"), the currently operative pleading, on March 12, 2013. Dkt. No. 24. In their SAC, plaintiffs allege that, on or about June 17, 2010, defendants Linda Smith and Deb Munyan, two employees of the Chenango County Department of Social Services, conducted a warrantless search of the residence of plaintiffs Myrna Horshinski and Cody Bess, and that during the course of the search, plaintiff Argro, plaintiff Horshinski's daughter, was also present. Dkt. No. 24 at 3-5. Plaintiffs also complain of an additional search at the home of the plaintiff Horshinski, conducted between December 14, 2010 and December 23, 2010, by employees of the Chenango County Social Services, including defendants Jessica Smarmach and John Doe. *Id.* at 5-6. According to plaintiffs' SAC, a third

3

search occurred in December 2010, conducted by defendants Crystal Cornell and Lace-Ann Porter, also employees of the Chenango County Department of Social Services. *Id.* at 6-9. Plaintiffs further allege that on or about September 22, 2011, two unnamed defendants employed by the Chenango County Department of Social Services attempted to search the residence of plaintiffs Horshinski and Bess and, when they were denied access, searched plaintiff Bess' vehicle without consent. *Id.* at 9-10. In their fifth cause of action, plaintiffs accuse defendants Kelly O'Connor, Marsh, and LaVoie of coercing plaintiff Argro to make a false, involuntary statement. *Id.* at 10-13. Lastly, plaintiffs claim that Chenango County and its Department of Social Services failed to properly train and supervise the offending employees. *Id.* 13-15.

A telephone conference was scheduled to be held by the court in connection with this action on January 22, 2014, for the purpose of addressing discovery issues raised by the defendants. Dkt. No. 45. Plaintiffs' counsel at the time, Tatiana Neroni, however, failed to participate in that conference and was admonished regarding that failure. Dkt. No. 46.

A follow-up telephone conference was conducted by the court on March 25, 2014, to discuss the status of the action. During that conference, in which Attorney Neroni participated, the court was informed that discovery was nearly complete and both sides anticipated the filing of

dispositive motions. Text Minute Entry Dated Mar. 25, 2014.

On May 14, 2014, following the close of discovery, defendant Marsh filed a motion for summary judgment requesting dismissal of plaintiffs' claims against him. Dkt. No. 57. The remaining defendants filed a summary judgment motion on their behalf on June 4, 2014. Dkt. No. 64. A decision and order was issued by Judge Mordue on March 30, 2015, granting the motion, in part, and dismissing some of plaintiffs' claims, additionally noting that the case would be scheduled for trial. Dkt. No. 72.

Following the issuance of Judge Mordue's decision, I held a telephone conference on July 1, 2015, to address the status of the case and, in particular, the question of settlement. Text Minute Entry Dated July 1, 2015. Settlement discussions continued in a follow-up conference held on July 13, 2015. Text Minute Entry Dated July 13, 2015.

On November 13, 2015, the New York State Supreme Court, Appellate Division, Fourth Department ("Fourth Department"), issued an order suspending Attorney Neroni from the practice of law for misconduct for a period of two years.[1] *Matter of Tatiana Neroni*, 135 A.D.3d 97 (4th Dep't 2015). On November 18, 2015, Chief District Judge Glenn T.

---

[1] The complaint against Attorney Neroni alleging professional misconduct was originally filed with the New York State Supreme Court, Appellate Division, Third Department ("Third Department"). *Matter of Neroni*, 135 A.D.3d 97, 98 (4th Dep't 2015). The matter was subsequently transferred to the Fourth Department by order issued on June 11, 2014. *Matter of Neroni*, 135 A.D.3d at 98.

5

Suddaby issued an order suspending plaintiff from the practice of law in this court for the same period of time.

On January 4, 2016, following Attorney Neroni's removal as plaintiffs' counsel of record, based upon her suspension, Woodruff Lee Carroll, Esq., filed a notice of appearance on plaintiffs' behalf. Dkt. No. 89. Upon his entry into the case, Attorney Carroll thereafter requested that the court schedule a settlement conference in the action. Dkt. No. 87. That request was granted, and a settlement conference was scheduled to be held on January 13, 2016. Dkt. No. 88. The settlement conference, however, was adjourned without date based upon plaintiffs' request that the court consider resolving the issue of whether any legal fees may be owed to Attorney Neroni in the event the parties reach settlement. Dkt. Nos. 93, 94. The parties have now filed formal requests to the court for a determination as to the issue of legal fees owing to plaintiff's former counsel. Dkt. Nos. 95, 99.

In response to the parties' request for resolution of the issue, Attorney Neroni has filed a written submission in which she (1) refuses to state the basis of her fee arrangement with the plaintiffs, (2) complains of Attorney Carroll's efforts to settle the action, (3) objects to the court making a determination concerning the issue, and (4) announces her intention to make a fee application pursuant to 42 U.S.C. § 1988 in the

future. Dkt. No. 101. Although plaintiffs have failed to provide the court with their analysis of Attorney Neroni's professional efforts taken on their behalf, they included Attorney Neroni's own brief description of certain tasks undertaken while she was attorney of record for plaintiffs in this action. Dkt. No. 95-3 at 2-3. Specifically, in an e-mail written to Attorney Carroll, Attorney Neroni explains that, while representing plaintiffs, she

> fought against three motions, 2 to dismiss, 1 for a summary judgment, partially won on those, held numerous conferences, on the phone and in person, had travel expenses, helped my clients with attending a deposition, reviewed tons of documents, did extensive factual and legal research with the use of an expensive database, and made it possible for the case to proceed to trial.

*Id.*

On February 24, 2016, I held a hearing to address the issue of Attorney Neroni's charging lien. Text Minute Entry Dated Feb. 24, 2016. Despite receiving notice of the proceeding, Attorney Neroni did not appear. *Id.*

The parties' request for determination of the fee issue has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Northern District of New York Local Rule 72.3(c), and Fed. R. Civ. P. 72(b)(3). Dkt. No. 100. Pending that determination, the trial in this matter, which had been scheduled to

commence on March 28, 2016, has been adjourned without date. Dkt. No. 104.

II. DISCUSSION

The parties' request for guidance regarding Attorney Neroni's claim that she is entitled to recover costs and attorney's fees in the matter raises several issues, including (1) the jurisdiction of the court to address the issue; (2) how a fee for an attorney who has withdrawn from a case should be calculated; (3) whether an attorney who has been suspended from the practice of law is entitled to seek attorney's fees, and if so the basis on which they should be calculated; and (4) whether, if this matter is resolved, Attorney Neroni will be entitled to make a fee application under 42 U.S.C. § 1988.

A. Jurisdiction

A federal court may, in its discretion, exercise ancillary jurisdiction to hear fee disputes between litigants and their attorneys when the dispute relates to an action pending before the court. *Levitt v. Brooks*, 669 F.3d 100, 103 (2d Cir. 2012.) "Federal courts have supervisory power over attorneys' fee arrangements . . . . because the courts have inherent authority to police the conduct of attorneys as officers of the court[.]" *In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 125 (2d. Cir. 2014) (citations and quotation marks omitted). The exercise of this inherent

power is particularly appropriate in a case where, as here, resolution of the fee dispute potentially impacts the distribution of any settlement proceeds. *See Grimes v. Chrysler Motors Corp.*, 565 F.2d 841, 843-44 (2d Cir. 1977) ("[J]urisdiction over the distribution of the settlement funds can be sustained as ancillary to jurisdiction over the claim itself.").

> B. <u>Fees Owed to an Attorney Who Has Withdrawn in an Action Generally</u>
>
> 1. <u>Existence of Charging Lien</u>

By statute, New York recognizes the existence of a charging lien in favor of an attorney who appears in an action but is subsequently replaced. N.Y. Jud. L. § 475; *see also Casper v. Lew Lieberbaum & Co. Inc.*, No. 97-CV-3016, 1999 WL 335334, at *5 (S.D.N.Y. May 26, 1999). Section 475 of the New York Judiciary Law provides, in pertinent part, as follows:

> [f]rom the commencement of an action . . . in any court . . . the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

N.Y. Jud. L. § 475. "By its terms, a charging lien attaches to the client's

9

ultimate recovery in the same case." *Casper*, 1999 WL 335334, at *8.

The right to assert a charging lien under section 475 is relinquished when the attorney's engagement is terminated by the client for cause or she withdraws without proper justification. *Cruz v. Olympia Trails Bus Co.*, No. 99-CV-10861, 2002 WL 1835440, at *4 (S.D.N.Y. Aug. 8, 2002); *Casper*, 1999 WL 335334, at *5. There are decisions from other jurisdictions that extend this limited exception and suggest a charging lien may be forfeited by an attorney who is suspended from the practice of law. *See, e.g., Kourouvacilis v. Am. Fed'n of State, Cnty. & Mun. Emps.*, 841 N.E.2d 1273, 1282 (Mass. App. Ct. 2006). New York, however, takes a more forgiving approach, permitting a suspended attorney to seek recovery for services rendered prior to her suspension in quantum meruit. *See, e.g., Padilla v. Sansivieri*, 31 A.D.3d 64, 65 (2d Dep't 2006) ("Under this Court's rules, a disbarred attorney may recover legal fees for services rendered prior to disbarment." (citation omitted)).

In this instance, because the termination of the attorney-client relationship between Attorney Neroni and plaintiffs was caused by the suspension of Attorney Neroni's license, the limited exception precluding recovery when the attorney is fired for cause does not apply, and Neroni is entitled to assert a lien under section 475. *See Flecha v. Goodman*, 221 N.Y.S.2d 823, 826 (Queens Cnty. Sup. Ct. 1961) (concluding that an

attorney suspended from the practice of law was entitled to a charging lien in order to prevent the client from using the suspension "as an escape from paying [the attorney] for services rendered").

### 2. Quantifying the Charging Lien

New York law "governs attorney's charging liens issued by federal courts in New York[.]" *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 178 (2d Cir. 2001). In pertinent part, the Special Rules of the Fourth Department provide that a suspended attorney "may be compensated on a *quantum meruit* basis for services rendered prior to the effective date of the . . . suspension[.]" 22 N.Y.C.R.R. 1022.27(e).[2] The amount of compensation "shall be determined, on motion of the disbarred, suspended or resigned attorney, by the court or agency where the action is pending[.]" *Id.* "The total amount of the legal fee shall not exceed the amount that the client would have owed if no substitution of counsel had been required." *Id.*

Quantum meruit is defined as "the reasonable value of services rendered." *Black's Law Dictionary* (10th ed. 2014). "An award in quantum meruit should in all cases reflect the court's assessment of the qualitative value of the services rendered, made after weighing all relevant factors

---

[2] To the extent that the Third Department's rules apply in this matter (in light of the fact that Attorney Neroni appears to have been admitted to practice there), its corresponding rule is substantively identical. 22 N.Y.C.R.R. § 806.9(b).

considered in valuing legal services." *Padilla*, 31 A.D.3d at 65; *accord, In re Emanuel*, 422 B.R. 443, 449 (S.D.N.Y. 2009). Among the factors a court may consider in these circumstances "are the difficulty of the matter, the nature and extent of the services rendered, the time reasonably expended on those services, the quality of performance by counsel, the qualifications of counsel, the amount at issue, and the results obtained (to the extent known)." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 148 (2d Cir. 1998) (citing *Spano v. Scott*, 561 N.Y.S.2d 678, 678 (4th Dep't 1990)). In addition, while courts may consider the fee arrangement between the discharged attorney and the client, "the magnitude of any recovery in *quantum meruit* does not depend upon the terms of the agreement." *The Dweck Law Firm, L.L.P. v. Mann*, No. 03-CV-8967, 2004 WL 1794486, at *2 (S.D.N.Y. Aug. 11, 2004) (quotation marks omitted). Ultimately, "[t]he determination of the reasonable value of the attorney's services is a matter within the sound discretion of the trial court." *Sequa Corp.*, 156 F.3d at 148 (quotation marks omitted).

    C.    <u>Calculation of Appropriate Award in This Case</u>

"[T]he party seeking fees bears the burden of proof." *The Dweck Law Firm L.L.P.*, 2004 WL 2202587, at *2; *accord, D'Jamoos v. Griffith*, No. 00-CV-1361, 2008 WL 2620120, at *3 (E.D.N.Y. Feb. 29, 2008). As was previously noted, plaintiffs themselves have provided the court with

no independent analysis of Attorney Neroni's professional efforts on their behalf. *See generally* Dkt. No. 95. Similarly, although provided ample opportunities to do so, Attorney Neroni has neglected to detail the work she undertook as plaintiffs' counsel prior to her suspension from the practice of law. Accordingly, I could recommend a finding that Attorney Neroni is not entitled to any recovery on the basis of her charging lien or otherwise for work performed prior to her withdrawal in this case. *See, e.g., In re Emanuel*, 422 B.R. at 450 (finding the attorney was not entitled to an award because he failed to produce sufficient evidence regarding the work he had completed on his client's behalf prior to his disbarment and removal from the action).

Mindful that any award of fees in this context is a matter within the sound discretion of the trial court, however, in determining the amount to which, if anything, Attorney Neroni is entitled, I have taken into consideration (1) Attorney Neroni's description of the services rendered on behalf of plaintiffs prior to her suspension, as detailed in an e-mail she wrote to Attorney Carroll on January 7, 2016, Dkt. No. 95-3 at 2-3; (2) the docket sheet in the case, which chronicles the procedural history of the case; (3) my knowledge regarding the potential settlement value of the case; and (4) my knowledge of the case generally. Based on those considerations, I find that plaintiffs derived some benefit from Attorney

Neroni's representation. Indeed, Attorney Neroni prepared an original complaint and then a SAC; engaged in discovery on behalf of plaintiffs; and opposed, with some degree of success, defendants' dispositive motions. In light of those efforts, as well as the court's knowledge of the value of Attorney Neroni's services and the court's understanding of the extent of the settlement, which in all likelihood will be achieved, I recommend that Attorney Neroni's quantum meruit award be affixed at $15,000.

    D.    Fee Application Under 42 U.S.C. § 1988

An issue that is not squarely before the court, but on which the parties have sought guidance in order to enhance their settlement negotiations, is whether Attorney Neroni would be entitled to seek attorney's fees under 42 U.S.C. § 1988 should the parties settle the action. In relevant part, section 1988 provides that "[i]n any action . . . to enforce sections . . . 1983 . . . of this title, . . . the court, in its discretion, may allow the prevailing party. . . a reasonable attorney's fee as part of the costs[.]" 42 U.S.C. § 1988(b).

The first question presented is whether plaintiffs may properly be regarded as prevailing parties. Under section 1988, a prevailing party is defined as "one who has been awarded some relief by the court." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human*

*Res.*, 532 U.S. 598, 601 (2001). Under *Buckhannon*, while settlement agreements enforced through a consent decree may serve as a predicate for an award of attorney's fees, "[p]rivate settlements do not entail the judicial approval and oversight involved in consent decrees." *Buckhannon Bd. & Care Home, Inc.*, 532 U.S. at 604 & n.7; *see also B.W. ex rel. K.S. v. N.Y. City Dep't of Educ.*, 716 F. Supp. 2d 336, 344 (S.D.N.Y. 2010) ("Not only must a prevailing party achieve a material alteration of the legal relationship between the parties, but that alteration must be judicially sanctioned."). Accordingly, a party settling privately would not qualify as a prevailing party under the statute.

A second question presented is whether a fee application under section 1988 belongs to a party, its attorney, or both. It is well-established that "a claim for such an award must itself be made by the party rather than the attorney." *Brown v. Gen. Motors Corp., Chevrolet Div.*, 722 F.2d 1009, 1011 (2d Cir. 1983); *accord, Valley Disposal Inc. v. Cent. Vt. Solid Waste Mgmt. Dist.*, 113 F.3d 357, 361 (2d Cir. 1997); *see also Lide v. Abbott House*, No. 05-CV-3790, 2008 WL 194656, at *4 (S.D.N.Y. Jan. 23, 2008) ("Under the [Civil Rights Attorney's Fees Awards Act of 1976] it is the prevailing party rather than the lawyer who is entitled to attorney's fees[.]"). Accordingly, in the event plaintiffs resolve their differences with defendants through a private settlement, and plaintiffs provide a general

release of all claims and stipulate to discontinue their action without recovery of costs of attorney's fees, it appears that as plaintiffs' former counsel, Attorney Neroni would not be entitled to make a fee application under section 1988. *See Brown*, 722 F.2d at 1012; *see also Lide*, 2008 WL 194656, at *4 (S.D.N.Y. Jan. 23, 2008) (denying motion for attorney's fees under section 1988 because general waiver included "broad language indicating that plaintiffs had accepted the [settlement amount] in exchange for releases, general release and a stipulation of discontinuance, without costs, without interest, and in full satisfaction of the claims against defendants" (quotation marks omitted)). Accordingly, depending upon how the matter is resolved, it appears that plaintiffs' former counsel in all likelihood will not be properly positioned to seek costs and attorney's fees under section 1988 at the close of the case.

III. <u>SUMMARY AND RECOMMENDATION</u>

Under New York law, despite her suspension from the practice of law, Attorney Neroni is entitled to recover in quantum meruit for any legal services performed on plaintiffs' behalf prior to her suspension and withdrawal as plaintiffs' attorney and to assert a charging lien on any recovery in the action. Although she was provided a full opportunity to do so, Attorney Neroni has failed to come forward with evidence, including contemporaneous time records, that would provide the court with the

information necessary to meaningfully assess the value of her services and affix a proper quantum meruit award. Nonetheless, I recommend that the court exercise its discretion and quantify Attorney Neroni's fees in quantum meruit, and hence the scope of her charging lien, at $15,000. Accordingly, it is hereby respectfully

RECOMMENDED that Attorney Neroni's charging lien in this case be quantified at $15,000 based upon the services performed on behalf of plaintiffs in this action prior to the date of her suspension.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:     March 25, 2016
            Syracuse, New York

_____
David E. Peebles
U.S. Magistrate Judge